**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JOSE ERNESTO MARTINEZ GALINDO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Attorney General of the United States;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles ICE Field Office; and<br><br>WARDEN, Adelanto ICE Processing Center<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

# I. INTRODUCTION

1. Petitioner Jose Ernesto Martinez Galindo, a 46-year-old asylum applicant from Peru with no criminal history, lived openly in Southern California for roughly four years under Respondents' own supervision. Respondents released him in 2022 on an Order of Release on Recognizance issued, by its terms, "[i]n accordance with section 236 of the Immigration and Nationality Act," enrolled him in the Intensive Supervision Appearance Program ("ISAP"), and by September 2026 had him wearing an electronic ankle monitor. The available records reflect that he reported as directed and pursued his asylum claim through counsel.

2. On the morning of his September 11, 2026 individual hearing, Petitioner received an email from the look-alike domain "myuscisdhs.com" announcing that the hearing would be cancelled and rescheduled through an "Attorney Cristina Jaramillo." The email was the final step in a scheme that had begun the day before, when a person operating a WhatsApp Business account under the name "Lic .cristhina Maria Jaramillo," displaying the seal of U.S. Citizenship and Immigration Services as its profile image, collected Petitioner's hearing notice, his release order, and a $1,000 payment. No attorney by that name had any connection to his case. Relying on the email, Petitioner did not go to court, and the Immigration Judge ordered him removed in absentia that afternoon. For

days afterward the same actor told him that no new court date had yet been assigned, then advised him in writing to skip his upcoming ICE appointment because he might be detained. Petitioner did not follow that advice. On September 22, 2026, knowing that he now had a removal order and that he could be arrested, he reported to ICE exactly as scheduled. Respondents took him into custody at that appointment.

3. Petitioner moved to reopen on September 29, 2026. By statute, that filing stays his removal until the Immigration Judge decides the motion. 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii). Respondents nonetheless hold him at the Adelanto ICE Processing Center without any hearing before a neutral decisionmaker, without any finding that he is a danger or a flight risk, and without any explanation beyond the existence of an order that, by Congress's command, they cannot presently execute.

4. This Petition does not ask the Court to review the removal order, to decide the motion to reopen, or to pass on Petitioner's eligibility for asylum. Those questions belong to the Immigration Court. It asks the Court to do what only a habeas court can: require that Respondents justify, before a neutral decisionmaker, the re-incarceration of a man they released years ago and who did nothing during

those years but comply, and to ensure that Respondents do not undermine Petitioner's ability to pursue the pending Motion to Reopen by removing him while the statutory stay is in force. This Court granted that relief in June 2026 to a Peruvian asylum seeker in materially similar circumstances—released on recognizance under § 1226 after presenting at the border, compliant with ISAP for three years, re-detained without notice at a check-in, and held at Adelanto while her removal was legally barred—and Respondents released her the next day. *See Crespo Carhuas v. Mullin*, No. 5:26-cv-03017-VBF-PD, Dkt. 10 (C.D. Cal. June 10, 2026) (report and recommendation), *accepted and judgment entered*, Dkt. 12 (C.D. Cal. June 10, 2026).

**II. CUSTODY**

5. Petitioner is in the physical custody of Respondents at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. He is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3).

## III. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 and Article I, § 9, cl. 2 of the Constitution (the Suspension Clause), and under 28 U.S.C. § 1331. The Court may grant relief under 28 U.S.C. §§ 2241 and 2243, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the All Writs Act, 28 U.S.C. § 1651.

7. Federal district courts have jurisdiction under § 2241 to hear challenges to the lawfulness of civil immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018) (plurality opinion); *Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019) (plurality opinion); *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011). Nothing in 8 U.S.C. § 1252 strips that jurisdiction here, as explained in Part VII and Claim Three below.

8. Venue is proper in this District and in the Eastern Division. A § 2241 petition challenging present physical confinement is properly filed in the district of confinement, *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), and Petitioner is confined in Adelanto, San Bernardino County, which lies within the Eastern Division of the Central District of California. Venue is also proper under 28 U.S.C. § 1391(e) because Respondents are officers of the United States sued in their

official capacities and a substantial part of the events giving rise to these claims occurred in this District. Once properly vested, this Court's jurisdiction is not defeated by any later transfer of Petitioner. *Ex parte Endo*, 323 U.S. 283, 304–07 (1944); *Padilla*, 542 U.S. at 441.

**IV. PARTIES**

9. Petitioner **Jose Ernesto Martinez Galindo, A# 089-232-925**, is a native and citizen of Peru. Immediately before his re-detention he resided in Southern California. He is detained at the **Adelanto ICE Processing Center** in the custody and under the control of Respondents.

10. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of Homeland Security. He is responsible for the administration and enforcement of the immigration laws, 8 U.S.C. § 1103(a), and oversees ICE.

11. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States. He oversees the Executive Office for Immigration Review ("EOIR"), which conducts the custody and removal proceedings at issue. He is named so that complete relief, including any order directing a custody hearing before an Immigration Judge, may be afforded.

12. Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement. He has authority over ICE detention and removal operations and to release Petitioner.

13. Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office, which exercises authority over Petitioner's detention, transfer, and removal. He is a legal custodian of Petitioner with authority to release him.

14. Respondent WARDEN, Adelanto ICE Processing Center is sued in his or her official capacity. The Warden has immediate physical custody of Petitioner under a contract with ICE and is Petitioner's immediate custodian and a proper respondent. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## V. STATEMENT OF FACTS

### A. Apprehension, Release, and Four Years of Supervised Compliance

15. On July 7, 2022, U.S. Border Patrol encountered Petitioner approximately one-half mile west of the Calexico, California port of entry. He told agents that he feared persecution or torture if returned to Peru. Respondents' own Form I-213 records that he has no criminal history. The I-213 reflects that he was processed for expedited removal with a credible-fear referral. **Exhibit A.**

16. On October 17, 2022, Respondents issued Petitioner a Form I-220A Order of Release on Recognizance, which states that he was released "[i]n accordance with section 236 of the Immigration and Nationality Act"—that is, 8 U.S.C. § 1226. **Exhibit B.** The order required him to appear for hearings, report to ICE as directed, not change residence without permission, and obey the law. *Id.* He remained at liberty under that order for approximately four years.

17. Respondents enrolled Petitioner in ISAP, administered by their contractor BI Incorporated, out of the Los Angeles ISAP office. **Exhibit C.** His December 15, 2022 Individual Service Plan placed him in the "Pre-Order" legal stage with scheduled office visits, SmartLINK telephonic reporting, ISAP case management, and ISAP court tracking, and required him to report his hearing results to ISAP. *Id.* He signed a court-appearance contract for his first master calendar hearing on February 22, 2023. *Id.* By September 17, 2026, Petitioner was wearing an ankle monitor.

18. Based on the records presently available to Petitioner and counsel, Petitioner complied with his reporting and court obligations before September 11, 2026. Respondents have not provided any record identifying a prior violation of his release conditions. Petitioner has attested that, from his release until his

re-detention, he complied with every condition of his release and attended every hearing and check-in required of him. He also attended the next ICE appointment scheduled after September 11, as described below. He lived and worked in the community.

**B. Petitioner's Pending Asylum Claim**

19. Petitioner has pursued relief from removal through counsel. The Immigration Court's November 20, 2025 Notice of In-Person Hearing, which set his individual hearing for August 20, 2026, was addressed to Aldo Flores of Via Novo Law APLC and reflects a running asylum employment-authorization clock, indicating that an asylum matter was pending. The individual hearing was thereafter reset to September 11, 2026 at 1:30 p.m. before Immigration Judge Nathaniel B. Walker. **Exhibit D.**

**C. The Impersonation Scheme**

20. On September 10, 2026, the day before his hearing, Petitioner was communicating about representation with a WhatsApp Business account, +1 (303) 732-3708, operating under the name "Lic .cristhina Maria Jaramillo" ("Lic." being the customary Spanish-language abbreviation for a licensed attorney) and displaying the official seal of U.S. Citizenship and Immigration Services as its

profile image. At that contact's request, Petitioner sent a copy of his hearing notice and his Order of Release on Recognizance. **Exhibit E.**

21. The same day, Petitioner received a document titled "Contrato de Financiamiento para Representación en Corte" from an entity calling itself "Fundación ALMA – Asociación Latinoamericana para Migrantes en América," acting with an entity called "Aliados Legales." **Exhibit F.** The document correctly recited his A-number, his hearing date and time, the assigned Immigration Judge, and the courthouse address; described a $4,500 "service" requiring a $1,000 initial payment; and directed payment by Zelle to an individual, "Karol Yate," at karoly0731@icloud.com. *Id.* Its signature blocks are blank. *Id.* A $1,000 Zelle payment was made to the recipient identified in the agreement (confirmation no. qy1u68hyo), and the payment confirmation was transmitted through Petitioner's WhatsApp account to the "Jaramillo" account, which acknowledged receipt.**Exhibit G.**

22. At approximately 9:03 a.m. on September 11, 2026, about four and a half hours before the hearing, Petitioner received an email from "eoirjustice@myuscisdhs.com" titled "Notice of Hearing Cancellation and Request for a New Hearing Date – A089-232-925" and signed "Immigration Court Matters Coordination." **Exhibit H.** It recited his name, A-number, hearing type, date, time,

judge, and courthouse address, and stated that "due to personal and professional circumstances related to the proper preparation and handling of your case, it will be necessary to cancel and request the rescheduling of the hearing," and that "Attorney Cristina Jaramillo has been notified of this matter and will submit the appropriate request to the Immigration Court to obtain a new hearing date." *Id.* The email also stated that any rescheduling remained subject to court approval and that Petitioner would "be notified promptly once the court assigns a new hearing date." *Id.* The domain "myuscisdhs.com" is not used by EOIR, DHS, or USCIS.

23. Petitioner, who speaks Spanish and requires an interpreter in English-language proceedings understood the email to mean that his hearing was off calendar and that the attorney he had just paid would obtain a new date. He did not appear. That afternoon, the Immigration Judge ordered him removed. **Exhibit I.** The order was entered in absentia, as reflected in the filed Motion to Reopen. **Exhibit J.**

24. The deception continued after the hearing. On September 12, the "Jaramillo" account told Petitioner "[w]e still haven't been assigned a court date" and asked him to line up witnesses for support letters. **Exhibit E.** On September 14, it sent him a screenshot of EOIR's automated case information reflecting "no

future hearings for this case" and urged him to prepare "the asylum support materials" because "we can't show up with nothing the day they assign the court date." *Id.*

25. By September 17, 2026, Petitioner understood that he had been ordered removed. On the evening of September 16, he wrote to the "Jaramillo" account that he had received "un documento de inmigración" ("an immigration document")—"[d]e expulsión" ("a deportation order")—and asked her to call him. Early on September 17, the account sent him an image of a document bearing the heading "SANTA ANA, CA, 92705," the Immigration Court's address, and told him that a motion to reopen "must be filed" and that she would send it "attaching the notification email that arrived," explaining that "we need to attach the notification email where they notify us that the court date was cancelled." *Id.* When Petitioner said he had an appointment with an immigration officer on September 22, the account advised: "As long as you have the deportation order, it would be preferable not to attend, they could keep you detained until the Motion is answered." *Id.* Petitioner responded that he was wearing an ankle monitor and asked what to do. *Id.* Later that day he wrote: "Tengo orden de expulsión . . . [x] no haberme presentado" ("I have a deportation order . . . [f]or not having appeared"), demanded his money back, and accused the contact of "lying to me" and

"deceiving me." *Id.* The contact stopped responding. *Id.* No motion was ever filed by that contact.

26. On September 18, 2026, Petitioner forwarded the fraudulent cancellation email to undersigned counsel's office. **Exhibit H**. Undersigned counsel's investigation confirmed that the only two licensed attorneys located under the name "Cristina Jaramillo" practice in unrelated fields, have never heard of Petitioner, Fundación ALMA, or Aliados Legales, and do not practice immigration law; when counsel called the contact channels listed for Fundación ALMA and Aliados Legales and asked about the bar status of the persons involved, the person who answered hung up. Published reporting describes the same pattern of fake immigration attorneys, cloned attorney identities, and fabricated court communications targeting immigrants in Southern California, including families of persons detained at Adelanto.

**D. Re-Detention**

27. On September 22, 2026, five days after acknowledging in writing that he had been ordered removed for not appearing, Petitioner reported to his scheduled ICE appointment in Southern California, as required by his release conditions. He did so even though the person he believed to be his attorney had

told him in writing that, "[a]s long as you have the deportation order, it would be preferable not to attend," because ICE "could keep you detained until the Motion is answered." Respondents took him into custody at that appointment. He has been detained at Adelanto since.

28. Respondents have never identified the basis for re-detaining Petitioner. As of the filing of this Petition, Respondents have not served on Petitioner or his counsel, and have not otherwise produced, any updated Form I-213 or other record of the September 22, 2026 arrest; any Form I-200 warrant of arrest or Form I-205 warrant of removal; any Form I-286 or other custody determination; any written notice revoking his Order of Release on Recognizance or any executed revocation entry on Form I-220A; or any statement of the reasons for his re-detention. On information and belief, Respondents re-detained Petitioner without any individualized determination that he presents a danger to the community or a risk of flight, and without considering the evidence that his non-appearance on September 11 was induced by fraud. No Immigration Judge or other neutral decisionmaker has made any such determination.

**E. The Motion to Reopen and the Statutory Stay**

29. On September 29, 2026, Petitioner, through undersigned counsel, filed a Motion to Reopen with the Santa Ana Immigration Court through the EOIR

Courts and Appeals System, served on DHS's Office of the Principal Legal Advisor. **Exhibit J.** The motion seeks rescission of the in absentia order on the ground that the fraudulent cancellation notice deprived Petitioner of operative notice, 8 U.S.C. § 1229a(b)(5)(C)(ii), and, in the alternative, on the ground that his failure to appear resulted from exceptional circumstances beyond his control, *id.* § 1229a(b)(5)(C)(i), (e)(1); it was filed eighteen days after the order and within the 180-day period applicable to the latter ground. The motion is supported by the documentary evidence described above, including Petitioner's declaration, counsel's declaration, the fraudulent email, the payment record, and a certified translation of the WhatsApp communications. *Id.* The Motion to Reopen remains pending.

30. By statute, "[t]he filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C); *accord* 8 C.F.R. § 1003.23(b)(4)(ii). **Petitioner's removal has therefore been stayed by operation of law since September 29, 2026.**

## VI. LEGAL FRAMEWORK

31. An in absentia order of removal is deemed administratively final upon entry. 8 C.F.R. § 1241.1(e). It is not appealable to the Board of Immigration

Appeals; the remedy Congress provided is a motion to reopen before the Immigration Judge. *See* 8 U.S.C. § 1229a(b)(5)(C); *Matter of Guzman*, 22 I&N Dec. 722 (BIA 1999). Congress paired that remedy with an automatic stay: the filing of a timely motion under clause (i), or a motion at any time under clause (ii), "shall stay the removal of the alien pending disposition of the motion." 8 U.S.C. § 1229a(b)(5)(C). Finality and executability are thus distinct. While the motion is pending, the order is final in name but cannot lawfully be carried out.

32. Respondents may contend that Petitioner is detained under 8 U.S.C. § 1231(a)(2), which provides for detention during the 90-day "removal period" in which the government "shall remove the alien." *Id.* § 1231(a)(1)(A). That provision presupposes a removal the government is permitted to carry out. Detention under § 1231 is detention to effectuate removal, *Zadvydas*, 533 U.S. at 697–99, and the Ninth Circuit has held that when removal is stayed pending further adjudication, the detention is not governed by § 1231 at all. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059–62 (9th Cir. 2008) (detention during judicial stay of removal is governed by § 1226(a)). The same reasoning applies where Congress itself has suspended removal pending the Immigration Judge's ruling. And whatever statute Respondents invoke, the Due Process Clause still governs. *See Johnson v.*

*Arteaga-Martinez*, 596 U.S. 573, 583–84 (2022) (resolving only the statutory question under § 1231(a)(6) and leaving constitutional challenges open).

33. Nor may Respondents recharacterize Petitioner's custody under 8 U.S.C. § 1225(b). **Respondents released Petitioner in 2022 "[i]n accordance with section 236"—the provision codified at 8 U.S.C. § 1226—placed him in the ISAP "Pre-Order" program, and supervised him for four years on that footing.** Having elected § 1226 authority, Respondents may not now invoke § 1225(b) to avoid the process that statute and the Constitution require. Petitioner acknowledges that the Board has taken a contrary view of § 1225(b) as applied to certain noncitizens apprehended near the border and later released. *See Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025); *see also Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Those decisions do not bind this Court on the meaning of the statute. *Cf. Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) (noncitizens present without admission who are apprehended in the interior are subject to § 1226, not § 1225(b)(2)(A)). In any event, Claims One and Two do not depend on the statutory label: no detention statute authorizes the government to dispense with due process.

## VII. EXHAUSTION, ANTICIPATED OBJECTIONS, AND THE LIMITS OF THIS PETITION

34. No statute requires exhaustion before a § 2241 challenge to immigration detention. Any prudential exhaustion requirement should be waived because administrative remedies are inadequate or futile and Petitioner faces irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017). If Respondents treat Petitioner's custody as arising under § 1231, an Immigration Judge has no authority to redetermine it; if they treat it as arising under § 1225(b), the Board's decisions in *Q. Li* and *Yajure Hurtado* bar Immigration Judges from granting bond. Either way, no administrative forum can afford the individualized hearing the Constitution requires. And each day of unlawful detention is an injury that cannot later be undone. No Immigration Judge or other neutral decisionmaker has made any custody determination concerning Petitioner; that absence is the injury he challenges, not an unexhausted remedy.

35. **This Petition seeks review only of Petitioner's detention and of Respondents' compliance with the statutory stay.** It does not ask this Court to review the in absentia order, to decide whether that order should be rescinded, or to determine Petitioner's eligibility for relief. Claims that challenge the legality of

detention, and claims that the government is acting without authority while removal is stayed, do not "arise from" a decision to execute a removal order under 8 U.S.C. § 1252(g) and are not claims "arising from any action taken or proceeding brought to remove" under § 1252(b)(9). *Jennings*, 583 U.S. at 292–95 (plurality opinion); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Arce v. United States*, 899 F.3d 796, 800–01 (9th Cir. 2018). Petitioner refers to the evidence of fraud not to obtain a ruling on the motion to reopen, but because it bears directly on whether his detention is justified: it is the only conduct Respondents could cite as a reason to doubt that he will appear.

36. Respondents may argue that Immigration Judges lack regulatory authority to conduct a "pre-deprivation" custody hearing, and that an order conditioning re-detention on such a hearing would therefore be impossible to obey. That argument would not defeat relief. First, the injunction Petitioner seeks runs against Respondents, not the Immigration Court; Respondents comply by not re-arresting Petitioner unless they first provide notice and a hearing. Second, this Court entered precisely that relief in *Crespo Carhuas*, and Respondents complied. Third, if no administrative mechanism exists to supply the process the Constitution requires, the consequence is that release is the only adequate remedy, not that the violation goes unremedied. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Preiser*

*v. Rodriguez*, 411 U.S. 475, 484 (1973). And the argument has no bearing on Petitioner's primary request, which is release.

37. Nor does the default allocation of the burden at an initial bond hearing under § 1226(a) govern here. Where the government re-detains a person it previously released, this Court and others have required the government to prove danger or flight risk by clear and convincing evidence. *Crespo Carhuas*, Dkt. 10 at 9–10; *see Singh v. Holder*, 638 F.3d at 1203–05. And the possibility of a bond hearing after six months of detention is no answer to a challenge to the process owed now.

## VIII. CLAIMS FOR RELIEF

### CLAIM ONE

### Fifth Amendment Due Process: Re-Detention After Prolonged, Compliant Release Without a Hearing Before a Neutral Decisionmaker

38. Petitioner realleges and incorporates by reference the foregoing paragraphs.

39. Freedom from government custody "lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. **When the government releases a person from custody and that person lives at liberty under conditions, the released person acquires a protected liberty interest in**

**remaining free, which the government may not revoke without adequate process.** *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (release carries an "implicit promise" that liberty will be revoked only if conditions are violated); *Young v. Harper*, 520 U.S. 143, 147–52 (1997) (extending *Morrissey* to a pre-parole release program). That interest grows with time: four years of compliance under Respondents' own supervision created reliance, ties, and expectations that a brief release would not.

40. Courts in this Circuit have repeatedly applied these principles to noncitizens whom DHS released on recognizance or parole and later re-detained without a hearing. *See Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025); *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 LX 214798 (C.D. Cal. May 13, 2026) (ordering release); *Zapata v. Kaiser*, 801 F. Supp. 3d 919 (N.D. Cal. 2025); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) (extended liberty and compliance strengthen the protected interest); *M.B. v. Noem*, No. 1:26-cv-00005-DJC-AC, 2026 WL 74155 (E.D. Cal. Jan. 9, 2026); *Oli v. Andrews*, No. 1:26-cv-00477-DJC-AC, 2026 WL 253425 (E.D. Cal. Jan. 30, 2026) (ordering release and a hearing at which the government bears the burden by clear and convincing evidence); *Matute v. Wofford*, 807 F. Supp. 3d 1120 (E.D. Cal. 2025). The interest persists even after an order of

removal has been entered. *Mendoza v. Warden of the Golden State Annex*, No. 1:25-cv-2030 CSK, 2026 U.S. Dist. LEXIS 24510 (E.D. Cal. Feb. 5, 2026).

41. This Court has already applied that framework to facts close to these. In *Crespo Carhuas v. Mullin*, No. 5:26-cv-03017-VBF-PD, Dkt. 10 (C.D. Cal. June 10, 2026) (report and recommendation), *accepted and judgment entered*, Dkt. 12 (C.D. Cal. June 10, 2026), the petitioner was a Peruvian national who entered without inspection, presented herself to immigration officers at the border to seek asylum, passed a credible-fear interview, and was released on her own recognizance under 8 U.S.C. § 1226. *Id.* at 2. She complied with her conditions, including ISAP supervision, for more than three years, and was re-detained without notice or a hearing when she reported for an ISAP check-in, then transferred to Adelanto. *Id.* at 2–3. Applying *Mathews*, the Court held that she "ha[d] a substantial liberty interest in maintaining her settled life out of custody," because "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Id.* at 5 (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017)). It held that there was "an unacceptably high risk" of erroneous deprivation absent a hearing, *id.* at 6, and that the government's interest in detaining without one is "at most minimal" because

"[i]n immigration court, custody hearings are routine," *id.* at 7 (quotations omitted). The Court ordered release within twenty-four hours on the prior conditions and enjoined re-detention absent pre-deprivation notice describing the change of circumstances and a timely hearing at which the government bears the burden by clear and convincing evidence. *Id.* at 8–10; Dkt. 12, Ex. 16. Respondents released her the next day. *Crespo Carhuas*, Dkt. 13 (C.D. Cal. June 12, 2026).

42. Petitioner states the differences plainly. Respondents did not oppose the petition in *Crespo Carhuas*, and the Court noted that they did not argue a material change in circumstances. *Id.*, Dkt. 10 at 7. And there, a pending appeal to the Board meant the removal order was not yet final, *id.* at 3–4, whereas here the in absentia order is deemed final upon entry, 8 C.F.R. § 1241.1(e), but is statutorily stayed. What *Crespo Carhuas* settled is the framework: **a person released under § 1226 holds a substantial liberty interest even in revocable freedom; detaining him without any determination of danger or flight risk creates an unacceptably high risk of error; the government's interest in detaining first and hearing later is minimal; and release with a prospective injunction is the appropriate remedy.** The only question that differs here is whether the in absentia order changes that result. For the reasons below, it does not.

43. A second order of this Court points the same way. In *Balmaceda Duarte v. Mullin*, No. 5:26-cv-04612-SK, Dkt. 12 (C.D. Cal. Sept. 3, 2026), the petitioner had been released on Form I-220A in 2022, reported as directed for more than three and a half years, and was re-detained without a hearing while removal was stayed pending his appeal to the Board; the Court ordered him "released from custody forthwith on the same terms and conditions of his September 2022 Order of Release on Recognizance." *Id.* at 1. That order was entered on an unopposed petition without a written opinion, and Petitioner offers it only as an illustration of the remedy.

44. Each factor of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), favors Petitioner.

45. *Private interest.* Petitioner's interest in freedom from physical confinement is the most fundamental liberty interest there is, and it is heightened here by four years of lawful, supervised life in the community, employment, and family ties, all of which detention has severed.

46. *Risk of erroneous deprivation.* The risk of error is acute because no neutral decisionmaker has ever found that Petitioner is dangerous or likely to flee. Respondents' own records point the other way. Because Respondents released

Petitioner under section 236, an ICE officer necessarily found in 2022 that his release "would not pose a danger to property or persons" and that he "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); *see Crespo Carhuas*, Dkt. 10 at 6 (initial release "at least implicitly" reflects such a determination) (citation omitted). Since then, the record has only confirmed that finding: no criminal history, four years of reporting, enrollment in ISAP, and electronic monitoring through an ankle monitor. **The single event Respondents could cite—the missed hearing—is documented to have been induced by criminals impersonating the Immigration Court, and Petitioner's conduct after learning of the order is that of a person who intends to appear: he confronted the impostor, contacted licensed counsel within a week, and on September 22, 2026, reported to ICE as scheduled, knowing that he had a removal order, that he might be detained, and that the person he believed to be his attorney had told him not to go.** A unilateral re-detention decision by the arresting agency, with no hearing, is precisely the procedure most likely to miss these facts. Additional process—a hearing before a neutral decisionmaker at which the government must justify detention—would substantially reduce that risk.

47. *Government interest.* The government's legitimate interests in detention are ensuring appearance and protecting the community. *Zadvydas*, 533

U.S. at 690–91. Respondents determined in 2022 that neither required detention, and four years of compliance confirmed that judgment. The government has no legitimate interest in detaining a person whose removal Congress has stayed simply because an order exists, and the burden of a prompt custody hearing is slight. If any additional assurance of appearance is warranted, Respondents' existing ISAP and electronic-monitoring tools supply it at far less cost than incarceration. *See Hernandez*, 872 F.3d at 990–91 (requiring consideration of alternatives to detention).

48. The structure of this case is the structure of the re-detention cases cited above. **First,** the government conferred liberty: Respondents released Petitioner under 8 U.S.C. § 1226 in 2022 and supervised him in the community, ultimately with an ankle monitor, for roughly four years. **Second,** the available records reflect that Petitioner met his reporting and court obligations throughout that period. **Third,** the only circumstance that could be said to have changed is the missed September 11 hearing and the resulting in absentia order. **Fourth,** no neutral decisionmaker has tested whether that changed circumstance warrants detention, and Respondents have not even stated that it is the reason they relied on. The documentary evidence that the non-appearance was induced by third-party fraud, and Petitioner's decision to report to ICE on September 22 after learning of

the order, are relevant here not to show that the order should be rescinded, but to show why a missed hearing in these circumstances cannot be presumed to demonstrate flight risk or noncompliance without a hearing.

49. Respondents' own precedent points the same way. DHS may revoke release under 8 C.F.R. § 236.1(c)(9), but once a person has been released, re-arrest requires a material change in circumstances. *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981); *see Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (unpublished) ("absent changed circumstances . . . ICE cannot redetain" a released noncitizen); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176–77, 1196–97 (N.D. Cal. 2017). And where the person disputes that the asserted change justifies detention, he is entitled to a prompt hearing before a neutral decisionmaker. *Saravia*, 280 F. Supp. 3d at 1176–77. Petitioner disputes it.

50. Petitioner acknowledges that *Saravia* lists a final order of removal among the circumstances that may justify re-arrest. *Id.* at 1176–77. The reason is evident: a final, executable order means removal is imminent, and detention serves the purpose of carrying it out. That reason is absent here. **Congress has stayed Petitioner's removal while the Immigration Judge decides the motion to reopen, 8 U.S.C. § 1229a(b)(5)(C), and if the motion is granted the order will**

**be vacated.** An order that Respondents are forbidden to execute, and that may soon cease to exist, does not make removal imminent and does not by itself show that Petitioner is dangerous or will flee. Nor is it a finding of anything about him: it was entered without his participation, on a record that did not include the fraud that kept him away. Whether a non-appearance induced in that manner warrants re-incarceration is a contested, fact-bound question, and it is exactly the question a neutral decisionmaker must answer.

51. Petitioner's release was also unlike a parole that expires by its own terms. *Cf. Rodriguez-Meza v. Bondi*, No. 5:26-cv-01120-FLA (SK), 2026 WL 980233, at *4 & n.5 (C.D. Cal. Apr. 9, 2026) (denying temporary restraining order where parole was granted for one year and terminated automatically, and noting that the liberty interest of a person released "without such temporal limit" differs). His Order of Release on Recognizance carried no end date.

52. The timing of Petitioner's arrest confirms the need for a hearing. Respondents arrested Petitioner on September 22, 2026, at an appointment they had scheduled and that he attended voluntarily, eleven days after the in absentia order was entered. Because the deprivation was predictable and planned, pre-deprivation process was practicable. *See Zinermon v. Burch*, 494 U.S. 113, 132,

136–39 (1990). And whatever authority Respondents may claim to have had on September 22, when the order had not yet been stayed, the circumstances changed on September 29, when Petitioner's motion to reopen stayed his removal by operation of statute. From that date forward, the only circumstance Respondents could invoke—an executable removal order—no longer existed, yet Respondents have continued to detain Petitioner without any assessment of whether detention remains justified. Due process requires that continued detention remain reasonably related to its purpose, *Zadvydas*, 533 U.S. at 690, and Petitioner's claim reaches his detention since the stay attached regardless of how the Court views the arrest itself.

53. The existence of the in absentia order does not displace this claim. The liberty interest arises from Petitioner's release and years of compliance. *Mendoza*, 2026 U.S. Dist. LEXIS 24510. Even where the government invokes post-order detention authority, due process remains a flexible inquiry governed by *Mathews*. *See Nola*, No. 5:26-cv-02180-MBK; *Arteaga-Martinez*, 596 U.S. at 583–84. And as set out in Part VI, Respondents cannot rest on § 1231(a)(2) to detain a person whose removal Congress has stayed, or on § 1225(b) to detain a person they themselves released under § 1226.

54. This case is also unlike *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), in which the Ninth Circuit held that the procedures available under § 1226(a) satisfied due process as applied to a detainee who had received a bond hearing before an Immigration Judge and administrative review. Petitioner has received no hearing of any kind, and if Respondents' position on his custody authority is accepted, no hearing is available to him.

55. Respondents' detention of Petitioner without an individualized hearing before a neutral decisionmaker, at which the government bears the burden of proving by clear and convincing evidence that he is a danger or a flight risk that no condition of release can mitigate, violates the Due Process Clause. *See Singh v. Holder*, 638 F.3d at 1203–05. **Because Petitioner's record makes any such showing implausible, and because Respondents have already had four years to observe him, the appropriate remedy is release on his prior conditions.**

## CLAIM TWO

### Fifth Amendment Due Process: Detention That Bears No Reasonable Relation to Its Purpose

56. Petitioner realleges and incorporates by reference the foregoing paragraphs.

57. Due process requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 79–80 (1992). Civil immigration detention is permissible only to the extent it serves its purposes of securing appearance and removal and protecting the community; it may not be punitive. *Zadvydas*, 533 U.S. at 690–91. This claim is independent of Claim One: it challenges not the absence of a hearing, but whether Petitioner's detention serves any legitimate purpose on this record.

58. **Petitioner's detention does not serve the purpose of effectuating removal, because Congress has forbidden his removal until the Immigration Judge rules on his motion to reopen. 8 U.S.C. § 1229a(b)(5)(C).** The period of that stay has no fixed end, and if the motion is granted, the in absentia order will be vacated and Petitioner will return to pre-order proceedings in which Respondents previously found detention unnecessary.

59. Petitioner's detention does not serve the purpose of ensuring his appearance. His record before September 11, 2026 was one of full compliance. His non-appearance on that date is supported by documentary evidence showing that it

was induced by an email impersonating the Immigration Court, sent from a look-alike government domain and delivered hours before the hearing by actors who had collected his money the day before and continued the deception for days afterward. A failure to appear produced by fraud of that kind says nothing about whether a person will appear when he knows he is required to. Petitioner also had every reason to appear: an asylum application pending before the court, and the attendant opportunity to present it. *Cf. Singh v. INS*, 295 F.3d 1037, 1039–40 (9th Cir. 2002) (petitioner with pending application for relief had no motive to miss his hearing).

60. Most tellingly, Petitioner's conduct after the order was entered is the opposite of flight. Told by the person he believed was his lawyer that he should skip his September 22 ICE appointment because he could be detained, and already aware that he had been ordered removed, he went anyway. A person who presents himself for possible arrest rather than disregard a reporting obligation is not a flight risk, and the only thing his appearance on September 22 led to was his own detention. Respondents' decision to detain him at that appointment, without any assessment of what his conduct showed, punishes the very compliance his release order demanded.

61. Petitioner's detention does not serve the purpose of protecting the community. Respondents' own records reflect that he has no criminal history.

62. Petitioner does not ask this Court to decide whether the fraud entitles him to reopening; that is for the Immigration Judge. **He asks only that the Court recognize that Respondents may not treat a fraud-induced non-appearance, standing alone and untested by any neutral decisionmaker, as a constitutionally sufficient basis for re-incarcerating him while the statute bars his removal.** Detention so untethered from its purposes is arbitrary and violates substantive due process.

## CLAIM THREE

### Preservation of the Statutory Stay and the Right to Counsel (Pleaded to Protect the Court's Jurisdiction)

63. Petitioner realleges and incorporates by reference the foregoing paragraphs.

64. Petitioner's removal is stayed by statute. 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii). Respondents have no discretion to remove him while the stay is in force, and any removal would be unlawful. *See Arce*, 899 F.3d at 800–01. This claim does not depend on why Respondents re-detained Petitioner or on Claims One and Two.

65. Because Petitioner is detained under a final removal order whose execution is presently barred by statute, Petitioner seeks narrowly tailored relief requiring Respondents to honor the statutory stay and to give counsel advance notice of any intended removal action. Petitioner does not allege that a removal is presently scheduled. But the order appears in Respondents' systems as final, 8 C.F.R. § 1241.1(e), and the stay arises not from any order directed to ICE but from a filing with a different agency. Relief of this kind imposes no burden on Respondents beyond compliance with the statute, and it protects the Court's ability to adjudicate this Petition. Respondents have argued in this District that a detained petitioner's removal ends the court's power to act. *See* Federal Respondents' Answer, Dkt. 7 at 2–3, *Martinez-Garcia v. Mullin*, No. 5:26-cv-05383-SSS-MAR (C.D. Cal.).

66. Removal would cause Petitioner irreparable harm. He told Border Patrol agents in 2022 that he fears persecution or torture in Peru, and he has an asylum application pending. Removal would send him to the country he fears before any adjudicator has heard his claim. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Removal would also gravely impair his pending motion to reopen. Although the Ninth Circuit has held that the regulatory post-departure bar cannot defeat a statutory motion to reopen, *Toor v. Lynch*, 789 F.3d 1055, 1060–65 (9th

Cir. 2015); *Coyt v. Holder*, 593 F.3d 902, 906–07 (9th Cir. 2010); *see also Matter of Bulnes-Nolasco*, 25 I&N Dec. 57 (BIA 2009), a person removed to Peru would face practical obstacles to prosecuting the motion and appearing at any reopened hearing that would impair, if not defeat, the remedy Congress provided. *See Singh v. Waters*, 87 F.3d 346, 350 (9th Cir. 1996) (government that "by physically removing [petitioner] made the full reopening of his case impossible" could not invoke failure to exhaust).

67. **If Petitioner were removed in violation of the stay, this Court would retain jurisdiction. A person unlawfully removed remains "in custody" for habeas purposes, because the bar on review after departure reaches only lawful departures.** *Singh v. Waters*, 87 F.3d at 347–50 ("The departure must be lawful."); *Carrillo v. Ashcroft*, 111 F. App'x 532, 533 (9th Cir. 2004) (unpublished). *See also Estrada Juarez v. Noem*, No. 2:26-cv-00801-DC-CKD (HC), 2026 U.S. Dist. LEXIS 60917, at *13, *16 (E.D. Cal. Mar. 23, 2026) (removal may be unlawful because it violates statutory or constitutional rights; a contrary rule would immunize due-process violations "so long as that right is violated quickly"). That the stay here arises by operation of statute rather than by order is no distinction; the agency lacks discretion in either case.

68. Such a removal would bear no resemblance to the lawful removal in *Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001), which followed a hearing at which the petitioner was represented and his counsel waived appeal. Petitioner was not heard at the hearing that produced the order against him, waived nothing, and is pursuing the very remedy Congress provided.

69. The petition would not become moot upon removal. Petitioner challenges the lawfulness of any removal executed while the stay is in force, not merely the length of his detention, so effective relief would remain available. *Compare Abdala v. INS*, 488 F.3d 1061, 1062–64 (9th Cir. 2007), *with Singh v. Waters*, 87 F.3d at 350 (permitting return "for the purpose of appearing at a hearing before the immigration judge"), *and Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977) (ordering restoration of "the same status he held prior to the . . . deportation"). *Accord Estrada Juarez*, 2026 U.S. Dist. LEXIS 60917, at *25 *(ordering government to facilitate return within seven days); Noem v. Abrego Garcia,* 145 S. Ct. 1017, 1018 (2025).

70. Section 1252 does not bar this claim. Section 1252(g) reaches "only three discrete actions," *AADC*, 525 U.S. at 482, is read narrowly in this Circuit, and "is simply not implicated" where the agency "totally lacks the discretion to

effectuate a removal order." *Arce*, 899 F.3d at 800–01. Respondents lack that discretion while the statutory stay is in force. Sections 1252(a)(5) and (b)(9) channel review of the removal order itself; Petitioner does not seek such review, only enforcement of the statutory stay and of his rights pending the Immigration Judge's decision. *See Jennings*, 583 U.S. at 292–95 (plurality opinion); *B.P. v. Bostock*, No. C23-0890-KKE, 2024 U.S. Dist. LEXIS 104683, at *12–*14, *20 (W.D. Wash. June 12, 2024). And § 1252(f)(1) does not limit individual relief. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550–51 (2022).

71. Respondents must also respect Petitioner's right to counsel. The INA guarantees the "privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose," 8 U.S.C. § 1362, and where notice or service is required it must be given to the attorney of record, 8 C.F.R. § 292.5(a); *see Hamazaspyan v. Holder*, 590 F.3d 744, 748–49 (9th Cir. 2009). Removal without notice to counsel violates both the regulation and the right to counsel. *Mendez*, 563 F.2d at 959 & n.1; *Singh v. Waters*, 87 F.3d at 349. An agency must comply with its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Undersigned counsel represents Petitioner in his removal proceedings and in this action. A transfer of Petitioner outside this District without notice would likewise impede counsel's access to him and his ability to seek

orderly relief, even though it would not divest this Court of jurisdiction. *Endo*, 323 U.S. at 304–07.

72. Petitioner therefore requests, in aid of the Court's jurisdiction, an order barring his removal while the statutory stay remains in effect, barring his transfer outside this District while this Petition is pending, and requiring advance written notice to counsel of any intended transfer or removal. In the alternative, should Petitioner be removed in violation of the stay, he requests a declaration that the removal was unlawful and an order directing Respondents to facilitate his prompt return at government expense, restoring the status quo that existed on the date of his re-detention.

## IX. REMEDY

73. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of the matter "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). **The traditional remedy for unlawful detention is release.** *Munaf*, 553 U.S. at 693; *Preiser*, 411 U.S. at 484. **Release here would restore the status quo that preceded the controversy: supervised liberty under Petitioner's Order of Release on Recognizance and ISAP,**

**including electronic monitoring if Respondents deem it necessary.** It would not interfere with his removal proceedings. He would remain subject to the Immigration Court's authority and would have every reason to pursue his motion to reopen and his asylum claim.

74. Prospective relief is also warranted, tailored to Petitioner's circumstances: an order barring re-detention, while the motion to reopen and any further administrative or judicial review of it remain pending, absent pre-deprivation notice describing the change of circumstances and a timely hearing before a neutral decisionmaker at which the government bears the burden by clear and convincing evidence. *See Crespo Carhuas*, Dkt. 10 at 9–10. That relief would not restrain execution of a removal order that becomes final and executable after the stay ends.

75. A unilateral release by Respondents would not moot this Petition. Petitioner seeks declaratory relief and individualized prospective relief barring re-detention without process, which a discretionary release would not supply. And Respondents' voluntary cessation of the challenged conduct would not deprive the Court of power to decide its legality where nothing would prevent Respondents from resuming it.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Issue an order to show cause directing Respondents to file a return within three days, or within such other time as the Court finds good cause to allow, 28 U.S.C. § 2243, and to produce with the return every document on which they rely as authority for Petitioner's detention, including any warrant, any notice revoking his Order of Release on Recognizance, and any custody determination;

(c) Pending adjudication of this Petition, enjoin Respondents from transferring Petitioner outside the Central District of California, and require Respondents to give Petitioner's counsel of record no less than 72 hours' advance written notice of any intended transfer or removal;

(d) Declare that Petitioner's detention without an individualized hearing before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment;

(e) Grant the writ and order Petitioner released from custody within twenty-four hours on the same terms and conditions as his Order of Release on Recognizance and his ISAP enrollment, including electronic monitoring if Respondents deem it necessary, or on such other reasonable conditions as the Court deems appropriate, and order Respondents to file a status report confirming his release within three days;

(f) Enjoin Respondents, while the Motion to Reopen and any further administrative or judicial review of it remain pending, from re-arresting or re-detaining Petitioner absent pre-deprivation written notice describing the change of circumstances asserted to warrant re-detention and a timely hearing before a neutral decisionmaker at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight that no condition of release can reasonably mitigate, with Petitioner's counsel permitted to be present;

(g) In the alternative, order that within seven days Petitioner receive an individualized custody hearing before this Court or before an

Immigration Judge, notwithstanding any regulation or Board decision that would otherwise bar the Immigration Judge from conducting it, at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner presents a danger or a flight risk that no condition of release can reasonably mitigate, and at which the decisionmaker considers alternatives to detention and Petitioner's ability to pay any bond; and order Petitioner's release if Respondents fail to provide such a hearing within that time;

(h) Enjoin Respondents from removing Petitioner while the stay under 8 U.S.C. § 1229a(b)(5)(C) remains in effect;

(i) In the alternative, should Petitioner be removed in violation of the stay, declare the removal unlawful and order Respondents to facilitate his prompt return to the United States at government expense, restoring the status quo that existed on the date of his re-detention;

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 7, 2026

## PROOF OF SERVICE

I hereby certify that on October 7, 2026, I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 7, 2026